Electronically Filed
Supreme Court
SCAP-16-0000645
15-MAR-2018
07:52 AM

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

---

WELLS FARGO BANK, N.A. AS TRUSTEE FOR OPTION ONE MORTGAGE LOAN
TRUST 2006-2 ASSET-BACKED CERTIFICATES, SERIES 2006-2,
Petitioner/Plaintiff-Appellee,

vs.

JONATHAN BEHRENDT,
Respondent/Defendant-Appellant,

and

ASSOCIATION OF APARTMENT OWNERS OF WAIALAE GARDENS; SAND CANYON
CORPORATION; JOHN DOES 1-10; JANE DOES 1-10; DOE PARTNERSHIPS 1-
10; DOE PARTNERSHIPS 1-10; DOE CORPORATIONS 1-10; DOE ENTITIES
1-10 and DOE GOVERNMENTAL UNITS 1-10,
Respondents/Defendants-Appellees.

---

SCAP-16-0000645

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CAAP-16-0000645; CIV. NO. 15-1-0407)

MARCH 15, 2018

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, AND WILSON, JJ.

OPINION OF THE COURT BY POLLACK, J.

This case involves the question of whether a purchaser

of property that is subject to a mortgage to which the purchaser

is not a party may challenge a foreclosing plaintiff's entitlement to enforce the note.  Because the requirement--that a party seeking to foreclose must be entitled to enforce the note at the inception of the foreclosure action--is based on principles of standing and statutory construction rather than contractual rights, we hold that the purchaser may assert such a challenge.  In this case, the evidence Wells Fargo presented regarding its entitlement to foreclose at the time the complaint was filed was not admissible on the grounds asserted, and therefore we vacate the order granting summary judgment and remand the case for further proceedings.

## I.    BACKGROUND

### A.    Factual History

On January 30, 2006, Karen Zakarian executed a promissory note (Note) in favor of the Funding Group, Inc. (Funding Group) for $408,000.  Funding Group then endorsed the note to Option One Mortgage Corp. (Option One) via an allonge,[1] and Option One endorsed the Note in blank via another allonge.[2]

---

[1] "An 'allonge' is defined as '[a] slip of paper sometimes attached to a negotiable instrument for the purpose of receiving further indorsements when the original paper is filled with indorsements.'"  Mortgage Elec. Registration Sys., Inc. v. Wise, 130 Hawaiʻi 11, 14 n.6, 304 P.3d 1192, 1195 n.6 (2013) (quoting Allonge, Black's Law Dictionary (9th ed. 2009)).

[2] If an instrument is endorsed in blank, it is payable to the bearer.  Hawaii Revised Statutes § 490:3-205(b) (2008).  For example, a holder of an instrument may write "pay to the order of" and not write the

(continued . . .)

2

The Note was secured by a mortgage executed by Zakarian in favor of Funding Group (Mortgage) on property located at 1430-4 Hunakai Street #106 in Honolulu (the "Property"), which is in a condominium project called Waialae Gardens.  The Mortgage was subsequently assigned from Funding Group to Option One on July 5, 2006, and then from Option One to Wells Fargo on May 10, 2007.

Following a bankruptcy proceeding, Zakarian entered into a security retention agreement on March 14, 2011, with American Home Mortgage Servicing, Inc. (AHMS), a loan servicer acting on Wells Fargo's behalf, which required that she continue to make payments and comply with the terms of the Note and the Mortgage in order to remain in the Property.  Subsequently, as a result of a separate foreclosure action between the Association of Apartment Owners of Waialae Gardens (AOAO) and Zakarian, a court-appointed commissioner conveyed the Property via a commissioner's apartment deed to Jonathan Behrendt on November 23, 2011.  An exhibit to the deed noted the Mortgage as an encumbrance.  AHMS notified Zakarian in a written notice dated

---

(. . . continued)

name of the endorsee.  See Uniform Commercial Code § 3-205 cmt. 2 (Am. Law. Inst. & Unif. Law Comm'n 2002).  This is a blank endorsement.  Id.

November 29, 2011, that she was in default under the terms of the Note and Mortgage.

### B.    Circuit Court Proceedings

Wells Fargo filed a complaint in the Circuit Court of the First Circuit (circuit court) on March 9, 2015, against Behrendt and the AOAO, inter alia, seeking foreclosure of the Mortgage and sale of the Property.  The complaint asserted that Wells Fargo was the holder of the Note and entitled to enforce it, that the Note was secured by the Mortgage, and that Wells Fargo was the mortgagee of record.  Additionally, the complaint alleged that Zakarian had defaulted in the performance of the terms set forth in the Note and Mortgage.  Copies of, inter alia, the Note, two allonges--one made out to Option One and one endorsed in blank, the Mortgage, and assignments from Funding Group to Option One and from Option One to Wells Fargo were attached to the complaint as exhibits.  The complaint also stated that the AOAO had previously foreclosed on the Property, that the Property was conveyed to Behrendt by virtue of a commissioner's deed, and that the interest of Behrendt in the Property was subject to the Mortgage.  Wells Fargo asserted that it was entitled to foreclosure of the Mortgage and the sale of the Property.

Following Behrendt's answer to the complaint, Wells Fargo moved for summary judgment and for a decree of

foreclosure. Wells Fargo attached as an exhibit to the summary judgment motion, inter alia, a declaration of Vanessa Lewis (Lewis Declaration). Lewis averred that she was a contract management coordinator for Ocwen Loan Servicing, LLC (Ocwen), the new servicer for Wells Fargo for the Mortgage, and in that capacity had access to and was familiar with Wells Fargo's records pertaining to the case, including Ocwen's records related to servicing the loan. Lewis indicated that she had personal knowledge of the facts and matters stated, based on her review of the business records described in her declaration. Lewis stated that Ocwen's records related to the loan were made and are maintained in the regular course of Ocwen's business. According to those records, Lewis represented, Wells Fargo is in possession of the original Note between Zakarian and Funding Group, a copy of which was attached to the summary judgment motion along with copies of the allonges and Mortgage. Additionally, Lewis stated that written notice was sent to Zakarian regarding her default on payments and Zakarian did not timely cure the default.

In opposition to the motion for summary judgment, Behrendt responded that, although Lewis claimed to be an Ocwen contract management coordinator and alleged that Ocwen was the servicing agent for Wells Fargo, Wells Fargo did not provide the court with any such authorization or agency agreement. Behrendt

also asserted that neither Lewis nor Wells Fargo explained what her role or relationship to Wells Fargo was besides claiming that she had access to Ocwen's business records. Lewis did not claim to be the custodian of the records, Behrendt argued, or provide any foundation to establish her competency to authenticate those records beyond merely being familiar with them. Thus, Lewis did not establish that she could authenticate the documents, Behrendt concluded, and her statements were inadmissible hearsay. Behrendt therefore maintained that Wells Fargo did not meet its burden of production to succeed on the summary judgment motion because there was a genuine issue of material fact as to the authenticity of the Note and as to whether Wells Fargo was the holder of the Note.

In its reply, Wells Fargo asserted that the testimony in the Lewis Declaration was admissible because it was subject to the hearsay exception for records of regularly conducted activity. (Citing Hawaii Rules of Evidence (HRE) Rule 803(b)(6).)

On August 30, 2016, the circuit court granted the summary judgment motion and issued a foreclosure decree in its "Findings of Fact, Conclusions of Law and Order Granting Plaintiff's Motion for Summary Judgment and Decree of Foreclosure Against All Defendants on Complaint Filed March 9, 2015" (Order Granting Summary Judgment). The court concluded

that Wells Fargo was entitled to have the Mortgage foreclosed, to have the Property sold free and clear of Behrendt's claim, and to judgment in its favor as a matter of law on the complaint. The court filed the Judgment the same day. Behrendt timely appealed to the Intermediate Court of Appeals (ICA) from the Order Granting Summary Judgment and the Judgment.[3]

## II.    STANDARDS OF REVIEW

A trial court's findings of fact are reviewed under the clearly erroneous standard of review. Dan v. State, 76 Hawai'i 423, 428, 879 P.2d 528, 533 (1994). Conclusions of law, in contrast, are reviewed de novo under the right/wrong standard of review. Marvin v. Pflueger, 127 Hawai'i 490, 495, 280 P.3d 88, 93 (2012). Specifically, this court reviews "the circuit court's grant or denial of summary judgment de novo." Querubin v. Thronas, 107 Hawai'i 48, 56, 109 P.3d 689, 697 (2005) (citation omitted). Similarly, "[o]n appeal, the issue of standing is reviewed de novo under the right/wrong standard." Abaya v. Mantell, 112 Hawai'i 176, 180, 145 P.3d 719, 723 (2006) (citation omitted).

---

[3]     After the parties submitted briefs to the ICA, Wells Fargo's application for transfer to this court was granted.

### III. DISCUSSION

### A. Behrendt May Challenge The Foreclosure

Behrendt contends that Wells Fargo did not meet its prima facie burden of demonstrating that it was the holder of the Note at the time its complaint was filed and did not provide any admissible evidence that it possessed the Note at the time it filed its motion for summary judgment. Behrendt argues that the Lewis Declaration did not demonstrate personal knowledge of any such facts, but that it instead offered vague, unfounded testimony that amounted to inadmissible hearsay at best. Thus, Behrendt contends that genuine issues of material fact remain in dispute with respect to Wells Fargo's standing to sue and whether Wells Fargo was the holder of the Note secured by the Mortgage.

Wells Fargo contends that because Behrendt was not a party to the Mortgage and because there is no reasonable interpretation of the Mortgage that confers contractual rights, obligations, and standing on Behrendt or upon any subsequent purchaser who does not assume the Mortgage, Behrendt could not "seek protection" under the Mortgage. In other words, Wells Fargo argues that Behrendt could not attack the foreclosure because he was a stranger to the Note and Mortgage transactions. Further, even if Behrendt did have standing to challenge the foreclosure, Wells Fargo asserts, the circuit court's Judgment

should still be affirmed because the Lewis Declaration authenticates[4] the original Note and states that Lewis had "personal knowledge of the facts and matters stated" based on her access to and familiarity with its records and the records of Ocwen.

Under our law, a foreclosing party "must demonstrate that all conditions precedent to foreclosure under the note and mortgage are satisfied and that all steps required by statute have been strictly complied with" to prove entitlement to foreclose.  Bank of Am., N.A. v. Reyes-Toledo, 139 Hawai'i 361, 367, 390 P.3d 1248, 1254 (2017).  Typically, this requires that the plaintiff "prove the existence of an agreement, the terms of the agreement, a default by the mortgagor under the terms of the agreement, and giving of the cancellation notice."  Id.  A foreclosing plaintiff must also prove that the plaintiff is entitled to foreclose the note and mortgage.  Id. (citing Hawaii Revised Statutes (HRS) §§ 490:3-301, 490:3-308).

The "burden to prove entitlement to enforce the note overlaps with the requirements of standing in foreclosure actions."  Id. (quoting Mottl v. Miyahira, 95 Hawai'i 381, 388, 23 P.3d 716, 723 (2001)).  Under the doctrine of standing, a

---

[4]     Wells Fargo uses the term "authenticate" to describe the act of confirming through a declaration that a document is a record of regularly conducted business activities admissible under HRE Rule 803(b)(6).

plaintiff typically must have suffered an injury-in-fact to "justify exercise of the court's remedial powers on his or her behalf." Id. at 368, 390 P.3d at 1255 (citing Mottl, 95 Hawai'i at 389, 23 P.3d at 724). For a foreclosing plaintiff, the injury-in-fact is the mortgagor's "failure to satisfy its obligation to pay the debt obligation to the note holder." Id. Thus, a person seeking to judicially foreclose on a mortgage following a promissory note default must establish that it was the "person entitled to enforce the note" as defined by HRS § 490:3-301 at the time the foreclosure complaint was filed to satisfy standing and to be entitled to prevail on the merits.[5]

---

[5]     HRS § 490:3-301 (2008) provides as follows:

> "Person entitled to enforce" an instrument means (i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to section 490:3-309 or 490:3-418(d). A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.

"Holder" as it appears in the statute is a term of art, defined in HRS § 490:1-201(b) (2008) as

> (1) The person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession;
>
> (2) The person in possession of a negotiable tangible document of title if the goods are deliverable either to bearer or to the order of the person in possession; or
>
> (3) The person in control of a negotiable electronic document of title.

(continued . . .)

Id. at 368-69, 390 P.3d at 1255-56; see also U.S. Bank N.A. v. Mattos, 140 Hawai'i 26, 33, 398 P.3d 615, 622 (2017); In re 1250 Oceanside Partners, 260 F. Supp. 3d 1300, 1312-13 (D. Haw. 2017).

Wells Fargo claims that Behrendt's defense is contractually-based and thus barred by the fact that Behrendt was a stranger to the Note and Mortgage. This court's reasoning in Reyes-Toledo, however, was based on standing and the statutory foreclosure requirements and was not tied to the contractual relationship between the parties. See 139 Hawai'i at 367-68, 390 P.3d at 1254-55 ("[A] foreclosing plaintiff does not have standing to foreclose on mortgaged property unless the plaintiff was entitled to enforce the note that has been defaulted on." (citing Hanalei, BRC Inc. v. Porter, 7 Haw. App. 304, 310, 760 P.2d 676, 680 (1988))). Thus, principles governing standing and statutory construction--and not contracts--apply here.[6]

---

(. . . continued)

As Wells Fargo claims to be entitled to enforce the Note as the holder of the Note and in turn argues that it is the holder of the Note by virtue of its possession of the endorsed-in-blank Note, Wells Fargo appears to use the terms "hold" and "possess" and their derivatives interchangeably.

[6]     Additionally, Behrendt's argument--that Wells Fargo did not hold the Note and was thus itself a stranger to the transaction--does not rely on Behrendt's contractual rights. Although it is true that Behrendt cannot assert an affirmative defense based on rights derived from a contract that he is not a party to, no privity of contract is required for Behrendt to argue

(continued . . .)

As we observed in Reyes-Toledo, requiring "that a foreclosing plaintiff prove its entitlement to enforce the note at the commencement of the proceedings 'provides strong and necessary incentives to help ensure that a note holder will not proceed with a foreclosure action before confirming that it has a right to do so.'" Reyes-Toledo, 139 Hawai'i at 369, 390 P.3d at 1256 (quoting Deutsche Bank Nat'l Trust Co. v. Johnston, 369 P.3d 1046, 1052 (N.M. 2016)).

> This procedural safeguard is vital because the securitization of mortgages has given rise to a pervasive failure among mortgage holders to comply with the technical requirements underlying the transfer of promissory notes and, more generally the recording of interests in property. Indeed, scholars have commented on the widespread documentation problems that are associated with modern mortgage securitization practices. It appears that under these circumstances, not even the plaintiffs may be sure if they actually own the notes they seek to enforce.

Id. (brackets, quotations marks, footnotes, and citations omitted).

Thus, requiring a foreclosing plaintiff to prove an entitlement to foreclose serves "essential purpose[s]," such as "protect[ing] the maker of an instrument from multiple enforcements of the same instrument." Id. (citing Porter, 7

---

(. . . continued)

that Wells Fargo has not met the burden of proving its right to foreclose on the Property. Indeed, under Wells Fargo's argued rule, a property owner could not defend against an ejectment or replevin action by a plaintiff falsely claiming to have purchased the property from a prior owner because the current property owner would not have been a party to the fabricated transaction. This approach is plainly flawed.

Haw. App. at 308, 760 P.2d at 679). The requirement also serves to ensure that a foreclosing party in an action brought against a homeowner is actually entitled to bring the action, thus protecting the homeowner from an improper foreclosure. Id. This prerequisite serves no less an essential purpose when the homeowner is a subsequent purchaser of the property as Behrendt is here.

The ICA has concluded that a party who obtains an interest in property subsequent to a foreclosing party can challenge the foreclosure. In Bank of New York Mellon v. Lemay, a defendant obtained its interest in the subject property at a foreclosure sale, and a party with a senior secured interest later brought a foreclosure action. 137 Hawai'i 30, 34, 364 P.3d 928, 932 (App. 2015). The defendant sought discovery regarding an employee of the purported loan servicer who submitted a declaration in support of the plaintiff's summary judgment motion. See id. at 34-35, 364 P.3d at 932-33. At a motion to compel hearing, the defendant argued that the requested information was relevant to determine if the foreclosing party had standing and was entitled to foreclose. Id. at 33, 364 P.3d at 931. The trial court indicated that it was not inclined to grant the motion as the defendant was not a party to the note and mortgage. Id. at 34, 364 P.3d at 932. The trial court later granted summary judgment in favor of the plaintiff, which

13

the ICA concluded was effectively a denial of the motion to compel.  Id.

On review, the ICA reasoned that the defendant was "permitted to seek discovery of information relevant to defending its interest in the property."  Id. (citing Hawai'i Rules of Civil Procedure Rule 26(b)(1)(A)).  The ICA concluded that the trial court's "hesitation" to grant the motion to compel because the defendant was not a party to the note or mortgage was "unwarranted" and that denying the motion was error.  Id. at 34-35, 364 P.3d at 932-33.  The ICA accordingly vacated the order granting summary judgment, ruling that the effective denial of the defendant's motion to compel constituted an abuse of discretion that substantially prejudiced the defendant.  Id. at 35, 364 P.3d at 933.

Although the defendant was not a party to the note or mortgage in Lemay, the ICA recognized that information rebutting the plaintiff's claim that it was entitled to enforce the note was relevant to the defense of the junior interest in the property.  Id. at 34-35, 364 P.3d at 932-33.  Thus, the Lemay decision allowed a subsequent purchaser to challenge whether the lender was entitled to foreclose on the mortgage securing the note.

Under facts similar to this case, a court of appeals in Florida also concluded that a subsequent purchaser has

14

standing to challenge the plaintiff's authority to bring the foreclosure proceeding.  3709 N. Flagler Drive Prodigy Land Trust v. Bank of Am., N.A., 226 So. 3d 1040, 1042-43 (Fla. Dist. Ct. App. 2017) (per curiam) [hereinafter Prodigy Land Trust]. There, the original property owners transferred title of the subject property via quitclaim deed to a trust, after which the foreclosing bank filed a foreclosure complaint naming the trust as a party.  Id. at 1041.  At trial, the foreclosing bank argued that, because the trust was not a party to the note or mortgage, the trust "should not be allowed to contest anything other than damages."  Id.

The court of appeals disagreed, reasoning that, because "[a]n owner of property must be joined in a foreclosure proceeding of that property in order to make a decree of foreclosure valid," there was "no question that [the trust] had standing to contest the foreclosure proceeding."  Id. (citations omitted).  The court explained that a "subsequent purchaser has an interest in assuring that the foreclosing plaintiff actually has the authority to bring the suit and is entitled to raise such a defense."  Id. at 1042.  Holding otherwise, the court concluded, "would allow a stranger to the note and mortgage to foreclose on the property, and a subsequent purchaser would

15

never have the ability to defend against the taking of a bona fide interest in the property through a foreclosure sale." Id.[7]

## B. Wells Fargo Did Not Satisfy Its Burden

Behrendt contends that Wells Fargo has not met its burden of proving that it was the holder of the Note at the time the complaint was filed because it has not offered admissible evidence on this point. Wells Fargo responds that the Lewis Declaration was sufficient to authenticate the copy of the Note attached to its summary judgment motion and that its possession of the Note at the time the action was initiated is in turn proven by the identical copy of the Note attached to the complaint.

Under Hawai'i Rules of Civil Procedure Rule 56(e) (2000) and Rules of the Circuit Courts of the State of Hawai'i

---

[7] The cases Wells Fargo cites in support of its position are inapposite, unpersuasive, or lack precedential value. They largely involve either challenges by individuals who did not possess an interest in the property at the time of the foreclosure action, see, e.g., United States v. Palmer, 578 F.2d 144, 145-46 (5th Cir. 1978) (per curiam); Thriving Invs., LLC v. Chao, 184 So. 3d 552 (Fla. Dist. Ct. App. 2015), or subsequent purchasers who challenged the substantive terms of the mortgage or the manner in which the mortgage was administered, see, e.g., Johnson v. Ocwen Loan Servicing, 374 F. App'x 868, 871 (11th Cir. 2010) (per curiam); CCM Pathfinder Palm Harbor Mgmt., LLC v. Unknown Heirs of Gendron, 198 So. 3d 3, 6 (Fla. Dist. Ct. App. 2015). Wells Fargo also cites an unpublished concurrence that is flatly contradicted by a published majority opinion of a court of equal authority within the same jurisdiction, compare Pealer v. Wilmington Tr. Nat'l Ass'n, 212 So. 3d 1137, 1137 (Fla. Dist. Ct. App. 2017) (Sleet, J., concurring) (per curiam), with Prodigy Land Trust, 226 So. 3d at 1040-41, and a case that addresses the separate issue of whether a subsequent purchaser may affirmatively bring an action based on an allegedly wrongful foreclosure after the foreclosure is complete--a matter on which we expressly reserve judgment. See Garner v. Wells Fargo Home Mortg., Inc., 505 F. App'x 837 (11th Cir. 2013) (per curiam).

Rule 7(g) (1997), "a declaration in support of a summary judgment motion must be based on personal knowledge, contain facts that would be admissible in evidence, and show that the declarant is competent to testify as to the matters contained within the declaration." U.S. Bank N.A. v. Mattos, 140 Hawai'i 26, 30, 398 P.3d 615, 619 (2017). Inadmissible evidence "cannot serve as a basis for awarding or denying summary judgment." Haw. Cmty. Fed. Credit Union v. Keka, 94 Hawai'i 213, 221, 11 P.3d 1, 9 (2000) (quoting GE Capital Haw., Inc. v. Miguel, 92 Hawai'i 236, 242, 990 P.2d 134, 140 (App. 1999)).

Wells Fargo contended before the circuit court that the loan documents attached to its summary judgment motion were admissible under the hearsay exception for records of regularly conducted business activities.[8] (Citing HRE Rule 803(b)(6)

---

[8] The circuit court's conclusions of law did not specify the ground on which it determined that the loan documents were admissible. Because the court granted the summary judgment motion after considering Wells Fargo's argument regarding HRE Rule 803(b)(6), which was the sole basis contended for admissibility, we consider the court's ruling as having been premised on HRE Rule 803(b)(6).

On appeal, Wells Fargo also does not cite an evidentiary rule as a basis for the admissibility of the loan documents. However, it identifies State v. Fitzwater as controlling precedent on the issue of the documents' admissibility. (Citing 122 Hawai'i 354, 367-68, 227 P.3d 520, 533-34 (2010) (outlining HRE Rule 803(b)(6)'s application to third-party business records that have been incorporated into the receiving company's business records).) Accordingly, this opinion addresses whether the proffered loan documents fall within the requirements of the HRE Rule 803(b)(6) exception and does not consider whether the instruments would be admissible under any other basis.

(2002).)  HRE Rule 803(b)(6) (Supp. 2002) provides that the following are not excluded by the rule against hearsay:

> A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made in the course of a regularly conducted activity, at or near the time of the acts, events, conditions, opinions, or diagnoses, <u>as shown by the testimony of the custodian or other qualified witness</u>, or by certification that complies with rule 902(11) or a statute permitting certification, unless the sources of information or other circumstances indicate lack of trustworthiness.

(Emphasis added.)  Wells Fargo argues that the Lewis Declaration establishes that the Note met the requirements for admission under HRE Rule 803(b)(6).

The Lewis Declaration reads in pertinent part as follows:

> 1.  I am a[] contract Management Coordinator of Ocwen Loan Servicing, LLC ("Ocwen"), servicer for WELLS FARGO BANK, N.A. AS TRUSTEE FOR OPTION ONE MORTGAGE LOAN TRUST 2006-2 ASSET-BACKED CERTIFICATES, SERIES 2006-2 ("[Wells Fargo]") of the mortgage loan at issue in this case (the "Loan"). As such, I am authorized to make this Declaration.
>
> 2.  I am over the age of 18 years, and I have personal knowledge of the facts and matters stated herein based on my review of the business records described below.  The statements set forth in this Declaration are true and correct, to the best of my knowledge and belief.
>
> 3.  In the regular performance of my job functions, I have access to and am familiar with [Wells Fargo]'s records and documents relating to this case (the "Records"), including Ocwen's business records relating to the servicing of the Loan (the "Ocwen Records").  In making this Declaration, I relied upon the Records.
>
> 4.  The Ocwen Records document transactions relating to the Loan and were made and are maintained in the regular course of Ocwen's business consistent with Ocwen's regular practices, which require that records documenting transactions relating to serviced mortgage loans be made at or near the time of the transactions documented by a person with knowledge of the transactions or from information transmitted by such a person.

> 5. According to the Ocwen Records, [Wells Fargo] is in possession of an original promissory note dated January 30, 2006 in the principal amount of $408,000.00 executed by KAREN LYNN ZAKARIAN in favor of THE FUNDING GROUP, INC. (the "Note"). A true and correct copy of the Note is attached hereto as Exhibit 1.
>
> 6. The Note is endorsed in blank.
>
> 7. According to the Ocwen Records, the Note is secured by a mortgage dated January 30, 2006 and recorded on February 7, 2006 in the Bureau of Conveyances of the State of Hawaii, as Document Number 2006-023995 (the "Mortgage"). A true and correct copy of the Mortgage is attached hereto as Exhibit 2.
>
> 8. According to the Ocwen Records, the Mortgage was assigned to OPTION ONE MORTGAGE CORPORATION by that assignment dated February 3, 2006 and recorded on July 5, 2006 in the Bureau of Conveyances of the State of Hawaii, as Document Number 2006-123207. The Mortgage was then assigned to [Wells Fargo] by that assignment dated April 24, 2007 and recorded on May 10, 2007 in the Bureau of Conveyances of the State of Hawaii, as Document Number 2007-084291 (the "Assignments"). True and correct copies of the Assignments are attached hereto as Exhibits 3 and 4.

In Mattos, this court reviewed the sufficiency of a nearly identical declaration attesting to a promissory note and other documents relating to a foreclosure under the HRE Rule 803(b)(6) business records exception. 140 Hawai'i at 31, 398 P.3d at 620. The Lewis Declaration, apart from information specific to this case, is virtually identical to the declaration in Mattos, which was also prepared by an Ocwen employee. Compare Lewis Declaration, supra, with Mattos, 140 Hawai'i at 30–31, 398 P.3d at 619-20. This court's decision in Mattos is therefore dispositive as to whether HRE Rule 803(b)(6) may serve as a basis to admit into evidence the documents attached to the Lewis Declaration.

Lewis did not aver that she was the custodian of records for her employer, Ocwen, or for Wells Fargo. Thus, the documents attached to her declaration are admissible under HRE Rule 803(b)(6) only if the declaration demonstrates that Lewis is a "qualified witness" with respect to those documents. See Mattos, 140 Hawai'i at 32, 398 P.3d at 621.

The court in Mattos held that a witness may be qualified to provide the testimony required by HRE Rule 803(b)(6) even if the witness is not employed by the business that created the document or lacks direct, personal knowledge of how the document was created. Id. "There is no requirement that the records have been prepared by the entity that has custody of them, as long as they were created in the regular course of some entity's business." Id. (quoting State v. Fitzwater, 122 Hawai'i 354, 366, 227 P.3d 520, 532 (2010)). The witness, however, must have enough familiarity with the record-keeping system of the business that created the record to explain how the record was generated in the ordinary course of business. Id.

Records received from another business and incorporated into the receiving business' records may in some circumstances be regarded as "created" by the receiving business. Id. Incorporated records are admissible under HRE Rule 803(b)(6) when a custodian or qualified witness testifies

20

that the documents were incorporated and kept in the normal course of business, that the incorporating business typically relies upon the accuracy of the contents of the documents, and the circumstances otherwise indicate the trustworthiness of the document.  See id.; Fitzwater, 122 Hawai'i at 367-68, 227 P.3d at 533-34.

Here, as in Mattos, the Lewis Declaration does not establish that the loan documents were received by Ocwen and then incorporated into Ocwen's records.  In addition, although Lewis averred that Ocwen's records relating to the loan were made and maintained in the regular course of Ocwen's business, Lewis asserted only that she had "access to and [was] familiar" with Wells Fargo's records and documents relating to this case. (Emphasis added.)  The Lewis Declaration does not establish that Lewis was familiar with Wells Fargo's record-keeping system.  It also makes no assertions as to Lewis's familiarity with the record-keeping systems of Funding Group or Option One, which first created the Note and allonges.  Thus, the Lewis Declaration satisfies the foundational requirements to make Lewis a qualified witness only with respect to Ocwen's original records about the loan and not any records of Wells Fargo or the loan documents themselves.  See Mattos, 140 Hawai'i at 32-33, 398 P.3d at 621-22.

The Lewis Declaration also refers only to the Note and not the allonges that Wells Fargo asserts were used to endorse the Note in blank. As noted, the Lewis Declaration does not establish that Lewis was a qualified witness, and thus she could not have satisfied the requirements of HRE Rule 803(b)(6) with respect to the allonges. But, as with the declaration in Mattos, the Lewis Declaration did not attempt to admit the allonges under the business records exception. See id. Thus, even if the Note fell within the bounds of HRE Rule 803(b)(6), the allonges endorsing it in blank did not because the declaration did not provide the requisite foundation. This is to say that the documents purporting to allow Wells Fargo to enforce the Note were not admissible under the business record exception. Since the documents were not admissible as asserted, Wells Fargo did not meet its burden of establishing facts necessary for a grant of summary judgment. See id.

In sum, Lewis was not a qualified witness with respect to the documents attached to her declaration, and thus she could not provide the foundation to admit them under HRE Rule 803(b)(6). The circuit court therefore erred in granting summary judgment to the extent it relied on the documents' admissibility under the business record exception to the hearsay rule.

## IV. CONCLUSION

There is no bar to Behrendt challenging Wells Fargo's standing to foreclose on the Note, and Wells Fargo submitted no properly admitted evidence demonstrating that it was entitled to enforce the Note at the time the complaint was filed, as required by Reyes-Toledo.  See Bank of Am., N.A. v. Reyes-Toledo, 139 Hawai'i 361, 368, 390 P.3d 1248, 1255 (2017).  The circuit court thus erred in its grant of summary judgment in favor of Wells Fargo.  Accordingly, the circuit court's Order Granting Summary Judgment and the August 30, 2016 Judgment are vacated, and the case is remanded to the circuit court for further proceedings.

J. Blaine Rogers and
Lori King Stibb
for petitioner

Gary Victory Dubin and
Frederick J. Arensmeyer
for respondent

/s/ Mark E. Recktenwald

/s/ Paula A. Nakayama

/s/ Sabrina S. McKenna

/s/ Richard W. Pollack

/s/ Michael D. Wilson

