**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-21-0000526**
**30-JAN-2025**
**08:19 AM**
**Dkt. 47 SO**

NO. CAAP-21-0000526

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


PENNYMAC CORP., Plaintiff-Appellee, v.
ELISE SARI TRAVIS, Defendant-Appellant,
and
BRUCE ROBERT TRAVIS; WAILEA COMMUNITY ASSOCIATION;
WAILEA KIALOA HOMESITES ASSOCIATION; Defendants-Appellees,
and DOES 1 THROUGH 20, inclusive, Defendants.
AND
WAILEA KIALOA HOMESITES ASSOCIATION, Cross-claimant-Appellee, v.
ELISE SARI TRAVIS, INDIVIDUALLY AND AS TRUSTEE UNDER THE
ELISE S. TRAVIS TRUST DATED NOVEMBER 5, 1990,
Cross-claim Defendant-Appellant,
and
BRUCE ROBERT TRAVIS, Cross-claim Defendant-Appellee

APPEAL FROM THE CIRCUIT COURT OF THE SECOND CIRCUIT
(CIVIL NO. 12-1-0527 (1))


SUMMARY DISPOSITION ORDER
(By: Hiraoka, Presiding Judge, and Wadsworth and Nakasone, JJ.)

This appeal arises out of a foreclosure decree and judgment entered by the Circuit Court of the Second Circuit (**Circuit Court**) against Defendant/Cross-claim Defendant-Appellant Elise Sari Travis (**Elise**), Defendant/Cross-claim Defendant-Appellee Bruce Robert Travis (**Bruce**) (together, the **Travises**), and other defendants.[1] Elise appeals from the August 25, 2021 **Judgment** entered in favor of Plaintiff-Appellee PennyMac Corp.

---

[1] They include Defendant-Appellee Wailea Community Association (**WCA**) and Defendant/Cross-Claimant-Appellee Wailea Kialoa Homesites Association (**WKHA**) (together, the **Other Defendants**).

(**PennyMac**) and against the Travises and the Other Defendants.[2/] Elise also challenges the Circuit Court's August 25, 2021 "Findings of Fact, Conclusions of Law, and Order Granting . . . PennyMac['s] Second Motion for Summary Judgment and Interlocutory Decree of Foreclosure Filed June 4, 2021" (**Foreclosure Decree**).[3/]

Elise signed a promissory note (**Note**) dated December 1, 2007, to Washington Mutual Bank, FA (**Washington Mutual**) in return for a loan (**Loan**). The Note was secured by a mortgage (**Mortgage**) on real property in Kihei, Maui. In 2008, the FDIC, as receiver for Washington Mutual, sold Washington Mutual's assets to JPMorgan Chase Bank, N.A. (**Chase**), and in 2012, the FDIC assigned the Mortgage to Chase. A notice of default was allegedly sent to Elise by Chase on August 29, 2011. In 2014, Chase assigned the Mortgage to PennyMac.

On May 23, 2012, Chase filed a complaint for declaratory relief and mortgage foreclosure against the Travises and the Other Defendants. On September 22, 2014, PennyMac was substituted for Chase as plaintiff. On June 24, 2016, PennyMac filed a motion for summary judgment. On October 13, 2016, the Circuit Court granted the motion and entered a foreclosure decree and judgment in favor of PennyMac.[4/] The Travises appealed. On November 21, 2018, this court entered a summary disposition order vacating the Circuit Court's foreclosure decree and judgment and remanding the case for further proceedings. See PennyMac Corp. V. Travis, No. CAAP-16-0000806, 2018 WL 6074792, at *2 (Nov. 21, 2018 Haw. App.) (SDO).

On remand, PennyMac filed a second summary judgment motion (**Second MSJ**) on June 4, 2021. On August 25, 2021, the Circuit Court granted the motion and entered the Foreclosure Decree and the Judgment. Elise filed this timely appeal.

On appeal, Elise contends that the Circuit Court erred

---

[2/]     It appears that the Judgment did not resolve WKHA's cross-claim against Bruce and Cross-claim Defendant-Appellee Elise Sari Travis, individually and as Trustee Under the Elise S. Travis Trust Dated November 5, 1990.

[3/]     The Honorable Blaine J. Kobayashi entered the Foreclosure Decree and the Judgment.

[4/]     The Honorable Rhonda I.L. Loo presided.

in: (1) granting the Second MSJ, where there were genuine issues of material fact;[5/] (2) denying Elise's February 23, 2018 motion for reconsideration of the February 16, 2018 "Order Granting [PennyMac's] Motion for Confirmation of Foreclosure Sale, Allowance of Costs, Commissions and Fees, Distribution of Proceeds, Directing Conveyance and for Writ of Possession/Ejectments Filed on March 6, 2017"; and (3) denying Elise's "request for time under [Hawaiʻi Rules of Civil Procedure] Rule 56(f) to have a second expert examine the questioned note." (Capitalization altered.)

After reviewing the record on appeal and the relevant legal authorities, and giving due consideration to the issues raised and the arguments advanced by the parties, we resolve Elise's contentions as follows, and vacate.

Elise first contends that the Circuit Court erred in granting PennyMac's Second MSJ. In support of this contention, Elise argues in part that the declaration submitted by PennyMac to admit its documents related to the Loan did not comply with the requirements set forth in U.S. Bank Trust, N.A., as Tr. for LSF9 Master Participation Tr. v. Verhagen, 149 Hawaiʻi 315, 326, 489 P.3d 419, 430 (2021), and Deutsche Bank Nat'l Tr. Co. as Tr. for Morgan Stanley ABS Cap. I Inc. Tr. 2006-NC4 v. Yata, 152 Hawaiʻi 322, 331, 526 P.3d 299, 308 (2023). We review the Circuit Court's grant of summary judgment de novo. Nozawa v. Operating Eng'rs Local Union No. 3, 142 Hawaiʻi 331, 338, 418 P.3d 1187, 1194 (2018).

On February 25, 2021, Johnny Morton (**Morton**) signed a declaration to authenticate PennyMac's documents (the **Morton Declaration**). Morton was authorized to sign his declaration on behalf of PennyMac as an authorized representative of PennyMac Loan Services, LLC (**PLS**), the servicer for the Loan. As

---

[5/] Elise contends there were genuine issues concerning the following: (1) "Johnny Morton was not a 'qualified witness' . . . and thus the records of the prior servicer were not admissible"; (2) "[Elise] presented specific facts showing that the prior servicer's records were not trustworthy and thus the burden shifted back to PennyMac . . . to prove that there was no genuine issue of material fact"; (3) "there is no proof that the notice [of] default was ever mailed to [Elise]"; (4) "the loan history presented by PennyMac was not understandable and should not have been admitted into evidence." (Capitalization altered.)

PennyMac's servicer, PLS maintained the records for the Loan. PLS received records related to the Loan from Washington Mutual, the FDIC, and Chase; integrated those records into PLS's business records; and relied upon the accuracy of the integrated records in providing its loan servicing functions.

> [W]hen an entity incorporates records prepared by another entity into its own records, they are admissible as business records of the incorporating entity provided that it relies on the records, there are other indicia of reliability, and the requirements of [Hawaii Rules of Evidence (**HRE**)] Rule 803(b)(6) are otherwise satisfied.

State v. Fitzwater, 122 Hawai'i 354, 367–68, 227 P.3d 520, 533–34 (2010).

> Incorporated records are admissible under HRE Rule 803(b)(6) when a custodian or qualified witness[6/] testifies that [(1)] the documents were incorporated and kept in the normal course of business, [(2)] that the incorporating business typically relies upon the accuracy of the contents of the documents, and [(3)] **the circumstances otherwise indicate the trustworthiness of the document**.

Wells Fargo Bank, N.A. v. Behrendt, 142 Hawai'i 37, 45, 414 P.3d 89, 97 (2018) (footnote and emphasis added).

The Morton Declaration satisfied the first two Behrendt elements. As to circumstances indicating trustworthiness of the incorporated documents, the Morton Declaration stated:

> 12. To the extent that the business records of the loan in this matter were created by the originating lender, the successor to the originating lender and/or the prior servicers, the originating lender's, the successor to the originating lender's and/or the prior servicer's business records for the loan were incorporated and boarded into [PLS]'s systems, such that the originating lender's, the successor to the originating lender's or the prior servicer's records concerning the Loan are now part of [PLS]'s business records. Before incorporating those records, [PLS] conducted an independent check into the prior records and found them in keeping with industry wide loan servicing standards and only integrated them into [PLS]'s own business records after finding the prior records were made as part of a regularly conducted activity, met industry standards and were determined to be trustworthy.
>
> . . . .
>
> 14. In this matter, [PLS] verified for accuracy the records received from Washington Mutual . . ., the

---

6/ Morton was a qualified witness because he had knowledge of PLS's record-keeping system and described its incorporation of prior loan servicers' documents. See Yata, 152 Hawai'i at 334 n.17, 526 P.3d at 311 n.17.

> originating lender; the [FDIC] as the receiver for [Washington Mutual]; and . . . Chase . . . , the prior servicer, and is thus familiar with the records and record-keeping systems of [Washington Mutual], the FDIC as receiver for [Washington Mutual], and Chase. [PLS] then integrated the records received from [Washington Mutual], the FDIC as receiver for [Washington Mutual] and Chase related to the Loan into [PLS]'s business records and has relied upon the accuracy of those boarded integrated records in providing its loan servicing functions.

In <u>Verhagen</u>, the loan servicer's declaration stated:

> The information regarding the Loan transferred to Caliber from the Prior Servicer has been validated in many ways, including, but not limited to, going through a due diligence phase, **review of hard copy documents, and review of the payment history and accounting of other fees, costs, and expenses charged to the Loan by Prior Servicer.**

149 Hawaiʻi at 326, 489 P.3d at 430 (emphasis added). The supreme court held:

> Though scant, this testimony establishes circumstances indicating the trustworthiness of Caliber's incorporated records. It is evidence that before incorporating JPMorgan Chase's documents, Caliber reviewed hard copies of the documents, engaged in a "due diligence" process, and reviewed the payment history and accounting associated with the loan. JPMorgan Chase's documents were not, in other words, uncritically incorporated into Caliber's own. They were vetted by Caliber. This pre-incorporation vetting, however nebulously described by Patterson's testimony, is a circumstance that indicates the trustworthiness of the documents.

<u>Id.</u> The supreme court held the incorporated records admissible under HRE Rule 803(b)(6). <u>Id.</u> at 327, 489 P.3d at 431.

In <u>Yata</u>, the loan servicers' declarations stated:

> SLS maintains quality control and verification procedures as part of the boarding process to ensure the accuracy of the boarded records.

152 Hawaiʻi at 325, 328, 526 P.3d at 302, 305. The supreme court held:

> The declarations in <u>Verhagen</u> provided **specific methods of validation** of documents from the prior loan servicer, "including, but not limited to, going through a due diligence phase, review of hard copy documents, and review of the payment history and account of other fees, costs, and expenses charged to the Loan by Prior Servicer." The Mountes and McCloskey Declarations merely assert that SLS has "quality control and verification procedures" to ensure the accuracy of incorporated records without stating what those procedures are. This court noted that the testimony indicating circumstances of trustworthiness in <u>Verhagen</u> was "scant" and "nebulously described" circumstances of

> trustworthiness. Here, there is even less testimony
> describing circumstances of trustworthiness. Thus, it
> appears that the third <u>Behrendt</u> requirement was not
> satisfied, and the documents attached to the Mountes and
> McCloskey Declarations were not admissible.

<u>Id.</u> at 335, 526 P.3d at 312 (emphasis added) (citations omitted).

Here, the Morton Declaration, like those in <u>Yata</u>, made conclusory statements. Morton did not explain what "specific methods of validation" PLS used in its pre-incorporation vetting to determine that the incorporated records were made as part of a regularly conducted activity, met industry standards, and were trustworthy. "[A]ffidavits that state ultimate or conclusory facts cannot be used in support of or in opposition to a motion for summary judgment." <u>Nozawa</u>, 142 Hawaiʻi at 338, 418 P.3d at 1194. On this record, we conclude that the Morton Declaration did not show circumstances establishing that the information in the records incorporated by PLS was trustworthy. <u>Yata</u>, 152 Hawaiʻi at 335, 526 P.3d at 312.

Elise allegedly defaulted on the Note in 2011, which appears to be at least two years before PLS began servicing the Loan for PennyMac. Exhibit K, the payment history for the Loan, has information about events that happened before PLS took over the loan servicing. The Morton Declaration did not explain what specific methods of validation PLS used to make sure that information was accurate. Exhibit K was not admissible under the HRE Rule 803(b)(6) exception to the hearsay rule. Morton's testimony about Elise's default, being based on Exhibit K, was inadmissible hearsay. Having failed to show Elise's default through admissible evidence,[7] PennyMac did not satisfy its burden as summary judgment movant. <u>Nozawa</u>, 142 Hawaiʻi at 342, 418 P.3d at 1198. Accordingly, the Circuit Court erred in granting the Second MSJ.

In light of our disposition, we need not address Elise's other arguments.

For the reasons discussed above, the Findings of Fact, Conclusions of Law, and Order Granting Plaintiff PennyMac Corp.'s Second Motion for Summary Judgment and Interlocutory Decree of

---

[7] The Travises' answer appears to deny a default.

Foreclosure Filed June 4, 2021, and the Judgment, both entered on August 25, 2021, in the Circuit Court of the Second Circuit, are vacated.  The case is remanded to the Circuit Court for further proceedings consistent with this summary disposition order.

DATED:  Honolulu, Hawaiʻi, January 30, 2025.

On the briefs:

Keith M. Kiuchi,
for Defendant-Appellant/
Cross-Claim Defendant-
Appellant.

Patricia J. McHenry and
Lisa K. Swartzfager
(Cades Schutte)
for Plaintiff-Appellee.

/s/ Keith K. Hiraoka
Presiding Judge

/s/ Clyde J. Wadsworth
Associate Judge

/s/ Karen T. Nakasone
Associate Judge